## Swann v. Alleva

*Robert W. Lentz,* for plaintiff.
*John E. Riley,* for defendant Alleva.

*Robert S. Gawthrop Jr.*, for defendant Phelps School.

*Steven L. Sugerman*, for defendants Ginsberg.

WOOD, J., March 24, 1987—Following my Decision of April 24, 1986, which awarded the horse Royal Whirl to defendant-intervenors, Samuel and Lois Ginsberg, both plaintiff and the Ginsbergs filed post-trial motions. Plaintiff urges me to reverse my ruling on the premise that she was a "buyer in the ordinary course of business" as provided in section 2-403(b) of the Uniform Commercial Code, 13 Pa.C.S. §1101 et seq., or, alternatively, that she was a "good faith purchaser for value" under UCC 2-403(a). A "buyer in the ordinary course of business" is defined in UCC 1-201(9) as, "A person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. . . ."

Thus, to be a "buyer in the ordinary course of business" Heather Swann must meet two separate criteria: she must have acted (1) in good faith, and (2) without knowledge that the transaction violated the Ginsbergs' ownership rights to the horse. "Good faith," as defined in UCC 1-201(19), is "honesty in fact in the conduct or transaction concerned." It is defined further in Black's Law Dictionary as, "Honesty of intention, and freedom from knowledge of circumstances which ought to put the holder on inquiry. An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit or belief of facts

which render transaction unconscientious. . . ."

Contrary to her counsel's vigorous protestations, the weight of the evidence belies Miss Swann's contention that she acted in good faith in this transaction. She admitted at trial that she had considerable experience buying horses. At the time of trial, she owned seven horses, exclusive of Royal Whirl. One of these horses was worth $200,000, and the others were valued in excess of $15,000.

Testimony at trial indicated that Royal Whirl was worth $12,000 to $20,000 as of November 1984, and that at the time of trial the horse was worth $7,000 to $12,000.[1] In view of this valuation of the horse, it is not credible that Ms. Swann believed $500 to be an adequate price for the horse. Rather, the more plausible explanation of the transaction is that Fred Alleva and Heather Swann executed the purported bill of sale for $500, so that she could enter the horse in a horse show in the "amateur-owner" category, and that the transaction was not meant to transfer permanent ownership of Royal Whirl to her. Because I find that this transaction was intended as a temporary expedient, I decline to make an award to plaintiff for any amount she may have paid to Alleva in execution of this transaction. I also point out that plaintiff brought this action solely in replevin, and did not request this relief at any time prior to post-trial motions.

Ms. Swann thus did not show the good faith required to be a "buyer in the ordinary course of business," or to qualify under UCC §2-403(a), and I

---

1. The introduction of expert testimony to establish the value of the horse was entirely appropriate in this case, if only in order to fix a value on the horse. See Standard Pennsylvania Practice 2d §96: 154, p. 501.

need not reach the question of whether she had knowledge of the Ginsbergs' ownership interest. However, she admitted in her answers to pretrial interrogatories that she did have such knowledge, and I find her attempts to deflect that particular answer off on her mother to be unconvincing.

Plaintiff also contends that I erred in concluding that the Ginsbergs are the legal owners of the horse, and that certain evidence relative to this issue was improperly admitted. There was ample competent evidence that the Ginsbergs bought Royal Whirl from Vince Dugan in June 1979 and owned the horse as of December 1984 and thereafter. The Jockey Club papers were a factor, but not a conclusive factor, in my determination, and their admission had little bearing on the outcome of this case.

For the above reasons, plaintiff's motion for post-trial relief is denied.

Defendants Samuel and Lois Ginsberg request the court to determine the money value of Royal Whirl as required by Pa.R.C.P. 1085(b). I set that value at $10,000, based on testimony presented at trial.

The Ginsbergs also urge me to award special damages for depreciation of the horse. However, in view of testimony that the horse could be brought back to the same standards of performance it held in 1985, and since the actual cost of retraining, excluding board and feed, was not established, I decline to award damages for depreciation. Furthermore, I decline to award damages for detention or loss of use, since, at the time of the replevin, the Ginsbergs had voluntarily surrendered possession of the horse to Fred Alleva to "turn her out" and in order to sell her.

Defendants also request an award of attorney's fees, and cite Pa.R.C.P. 1075.3(b) in support there-

of. However, Pa.R.C.P. 1075.3 provides only that defendant may be entitled to those costs and fees sustained in the event plaintiff did not sustain her right to an ex parte issuance of the writ of seizure. These expenses are distinct from special damages awarded at the final disposition of the case. See comment, Pa.R.C.P. 1075.2(d)(3). Plaintiff *did* sustain her writ in the proceedings before Judge Endy, so I can't award damages under Pa. R.C.P. 1075.3. Pa.R.C.P. 1085(b)(3) does not authorize the award of counsel fees in absence of statutory allowance or clear agreement by the parties: *Madden Contracting Company v. Lastooka,* 18 D.&C.3d 495 (1980). I find no basis for awarding counsel fees under 42 Pa.C.S. §2503(9). Therefore, I have no basis for awarding counsel fees.

Nor do I find plaintiff's conduct to merit an award of punitive damages.